Case No. _____

### In The
# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

BRIANA VALENCIA, individually and on behalf of all others similarly situated,

*Plaintiff-Petitioner*

*v.*

VF OUTDOOR, LLC, a California limited liability company, and DOES 1 to 50, inclusive,

*Defendants-Respondents.*

## PLAINTIFF-APPELLANT BRIANA VALENCIA'S PETITION FOR PERMISSION TO APPEAL AN ORDER DENYING CLASS CERTIFICATION PURSUANT TO RULE 23(F)

Related to Order Adopting Findings and Recommendations Denying Motion to Strike and Plaintiff's Motion for Class Certification
Entered November 30, 2022
By the United States District for the Eastern District of California
Case No. 1:20-cv-1795-ADA-SKO
Honorable Judge Sheila K. Oberto

**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
100 Pine St., Ste 1250, San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191
Attorneys for Plaintiff-Petitioner

# DISCLOSURE STATEMENT

The undersigned counsel of record for Plaintiff-Petitioner Briana Valencia hereby furnishes the following information in accordance with Rule 26.1 of the Federal Rules of Appellate Procedure:

1. Plaintiff-Petitioner is not a nongovernmental corporate party.

Dated: December 12, 2022    **POTTER HANDY, LLP**

      By: _____/s/James M. Treglio_____
       James M. Treglio
      Counsel for Plaintiff-Petitioner, Briana Valencia and the Aggrieved Employees

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................... iii

TABLE OF AUTHORITIES ...................................................................v

    Cases ..................................................................................v

    Statutes ................................................................... vi

I.        INTRODUCTION ........................................................1

II.      STATEMENT OF JURISDICTION ........................................3

III.    QUESTIONS PRESENTED..................................................3

IV.    RELIEF SOUGHT...........................................................4

V.     STATEMENT OF FACTS AND PROCEDURAL HISTORY ..............4

    A. Overview...........................................................4

    B. Plaintiff's Evidence In Support of Class Certification ......................5

    C. Defendants' Facts and Evidence.......................................6

    D. The District Court's Decision ...........................................7

VI.    REASONS FOR GRANTING THE PETITION....................................9

    A. Legal Standard ....................................................9

    B. The Lack of Rule 23 Analysis Warrants Review.............................10

    C. Plaintiff presented sufficient evidence that Defendant had a common policy that affects all Class Members................................................11

    D. The Report Erred By Relying Too Heavily On Its Perception of the Merits of Plaintiff's Claims .............................................16

E. Should the Report be correct about the lack of commonality across all four facilities, the Court can modify the class definition to limit it to the Visalia location. ..........................................................................18

F. Absent Reversal or Remand at this Time, this Case Is Effectively over for Plaintiff and the Affected California Residents ..........................19

VII.      CONCLUSION .......................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Astiana v. Kashi Co.* (S.D. Cal. 2013) 295 F.R.D. 490, 492 ....................................18

*Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975) ........................... 16, 17

*Blair v. Equifax Check Services, Inc.,* 181 F.3d 832, 834 (7th Cir. 1999) ..............19

*Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 572 (C.D. Cal. 2008).....................14

*Chamberlan v. Ford Motor Co.,* 402 F.3d. 952, 957 (9th Cir. 2005)................ 9, 10

*Christensen v. Carter's Retail, Inc.*, No. 8:20-cv-00776 JLS (KESx), 2021 WL 4932244 (C.D. Cal. October 21, 2021) ................................................................15

*Dalton v. Lee Publications,* WL 2181219, (S.D. Cal. May 20, 2013 .....................17

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) .............. 10, 11

*Figueroa v. Delta Galil USA, Inc.*, No. 18-cv-07796-RS, 2021 WL 1232695 (N.D. Cal. March 30, 2021) ......................................................................................16

*Gerawan Farming, Inc. v. Lyons*, 24 Cal. 4th 468, 514 (2000)...............................15

*Hargreaves v. Associated Credit Servs.*, 2017 U.S. Dist. LEXIS 79122, *6-7 (E.D. Cal. May 23, 2017) .............................................................................................16

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964)....17

*Heredia v. Eddie Bauer LLC*, No. 16-cv-06236-BLF, 2020 WL 127489 (N.D. Cal. January 10, 2020) ......................................................................................... 15, 16

*Krueger v. Wyeth, Inc.* (S.D. Cal. 2015) 310 F.R.D. 468, 473–474 ................... 2, 18

*Lao v. H&M Hennes & Mauritz, L.P.*, No. 5:16-cv-00333-EJD, 2018 WL 3753708 (N.D. Cal. August 8, 2018) ...................................................................................13

*Moore v. Hughes Helicopters, Inc*. 708 F.2d 475, 480 (9th Cir.1983)....................17

*Moore v. Ulta Salon Cosmetics & Fragrance Inc.*, 311 F.R.D. 590, 604, 612 (C.D. Cal. 2015).............................................................................................................14

*Narouz v. Charter Communications, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010)...10

*Negrete v. ConAgra Foods*, 2019 WL 1960276 at *4 (C.D. Cal. 2019); ................14

*Ornelas v. Tapestry, Inc.*, No. C 18-06453 WHA, 2021 WL 3471173 (N.D. Cal. August 6, 2021)................................................................14

*Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008) .........14

*Perez v. Leprino Foods Company* (E.D. Cal., Jan. 6, 2021, No. 117CV00686AWIBAM) 2021 WL 53068, at *16 .............................................14

*Rodriguez v. Nike Retail Services, Inc.* (9th Cir. 2019) 928 F.3d 810, 818...... 13, 16

*Rodriquez v. Hayes*, 591 F.3d 1105, 1112-1113 (9th Cir. 2009)............................10

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018).....................11

*Scott-George v. PVH Corporation*, No. 2:13-cv-00441-TLN-DAD, 2015 WL 7353928 (E.D. Cal. November 19, 2015) ............................................................14

*Staton v. Boeing* Co., 327 F.3d 938, 954 (9th Cir. 2003) ......................................17

*Trevino v. Golden State FC LLC*, NO. 1:18-cv-00120-DAD-BAM, 2021 WL 2328414 (E.D. Cal. June 7, 2021).......................................................................14

*Troester v. Starbucks*, 5 Cal. 5th 829, 848 (2018) ................................................15

*Troester v. Starbucks*, 738 Fed. App'x 562, 562 (9th Cir. 2018).................... 14, 15

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009)...............17

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .......................................10

*Wang v. Chinese Daly News*, 231 F.R.D. 602, 605 (C.D. Cal. 2005) ....................17

**Statutes**

Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)................................3

Federal Rule of Appellate Procedure 5(a) ................................................................3

# I.    INTRODUCTION

Plaintiff-Appellant Briana Valencia ("Plaintiff") hereby submits her Petition For Permission to Appeal Pursuant to Fed.R.Civ.P. 23(f). Plaintiff filed her wage and hour complaint (Dkt. 1-1) on August 27, 2019 against Defendants-Respondents VF Outdoor, LLC ("Defendants"), seeking to represent five classes of individuals who are or were employed by Defendants or their predecessor or merged entities in California as hourly, non-exempt employees, who were employed at one of Defendants' distribution centers in California, who did not sign an arbitration agreement with Defendants – the Unpaid Time Class, the Overtime Class, the Meal Period Class, the Rest Period Class, and the Wage Statement Subclass (the "Class" or "Class Members").

After months of discovery, on November 15, 2021, Plaintiff filed her motion for class certification ("Motion;" Dkt. No. 65) with evidence showing that Plaintiff and the class members were not compensated for all their hours worked, not provided with proper overtime compensation, and not provided with adequate off-duty meal periods and rest periods due to the placement of time clocks within Defendants' distribution centers (warehouses) found in Visalia, Santa Fe Springs, Ontario and Irvine. As Plaintiff was able to establish that there was a uniform policy with regard to the physical placement of the timeclocks behind the security checkpoint, the question as to whether or not time spent undergoing these security checks is compensable could have been adjudicated on a class-wide basis.

Defendants, in response to Plaintiff's Motion, produced five (5) video files that allegedly contain footage of security checks in the different distribution centers of Defendants in California ("Videos"), in violation of Fed.R.Civ.P. 37 because the Videos were not previously disclosed in supplemental disclosures and Defendants' failure to disclose was not substantially justified or harmless. (Dkt No. 71-4).

Plaintiff timely objected to the Videos, and filed a motion to strike them. (Dkt No. 74).

Plaintiff's Motion was set to be heard on March 2, 2022, but the Magistrate cancelled oral argument. On September 23, 2022, the Magistrate served its Report and Recommendations ("Report") to deny Plaintiff's Motion and Motion to Strike (Dkt No. 89). Plaintiff timely filed its Objection to the Report (Dkt No. 90). On November 30, 2022, the District Judge adopted the Report, issuing an Order denying Plaintiff's Motion and Motion to Strike ("Order;" Dkt No. 91).

Unfortunately, and as described in detail below, the district court's Order was improper given that the Report it adopted was manifestly erroneous on several grounds. First, the Report, respectfully, misconstrued the requirements of class certification. While the Report correctly noted that Plaintiff did not present a written uniform policy to be challenged (Dkt No. 89 at pp. 15-26), the Report erred in finding that there was no uniform policy at issue in this action. As will be shown below, the uniform policy being challenged was the physical placement of the timeclocks *behind the security checkpoint*, *which Defendant later changed as a result of this litigation*, is a common and uniform policy that affected all the Class Members. As will be discussed further below, several courts in various bag and security check cases have ruled that even mere seconds spent undergoing these checks are sufficient to be classified as unpaid time.

Second, the Report erred as it attempted to look into the merits of the claims – namely whether or not Plaintiff and the Class Members should be compensated for their time going through the security checkpoints. (Doc. 89 at pp. 14-19). As discussed below, that sort of analysis is not appropriate at the class certification stage. (*Krueger v. Wyeth, Inc.* (S.D. Cal. 2015) 310 F.R.D. 468, 473–474).

Finally, the Report erred when it recommended the Court deny the motion for class certification upon finding that there was a common, uniform policy in Visalia,

but because the placement of the time clocks was different in other locations, there was no commonality. To the extent that such an analysis is correct, and it is not, the appropriate recommendation would not be to deny class certification, but to modify the class definition to just the Visalia location.

Because the district court's manifest error, the Court should allow review of the district court's ruling now, rather than allow the district court to compound through trial and beyond. And because Plaintiff and the class members all earned at or near the minimum wage, there is no question that the denial of class certification represents a death knell for the class members, each of whom have limited damages.

For the foregoing reasons, Plaintiff respectfully requests the Court, pursuant to Fed.R.Civ.P. 23(f) grant her Petition for Permission to Appeal the Order Denying Class Certification.

## II.    STATEMENT OF JURISDICTION

The District Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because Defendants alleged in their Notice of Removal that CAFA's minimal diversity and amount-in-controversy requirements were satisfied. (Dkt. No. 1). This Court has jurisdiction pursuant to Federal Rule of Civil Procedure 23(f) and Federal Rule of Appellate Procedure 5(a), as this Petition is timely filed within 14 days of the District Court's November 30, 2022 Order denying Plaintiff's Motion.

## III.    QUESTIONS PRESENTED

1. Whether this Court should grant leave to appeal pursuant to Rule 23(f) where the District Court's denial of class certification found in its Order disregards Defendants' uniform policy with regard to the physical placement of the timeclocks behind the security checkpoint and fails to contain the rigorous analysis of whether

litigation of Plaintiff's claims provides common answers to common questions that would resolve those issues for the class.

2. Whether this Court should grant leave to appeal pursuant to Rule 23(f) where failure to review now will prevent appellate review of the District Court's Order.

## IV.   RELIEF SOUGHT

Plaintiff respectfully requests this Court grant leave to appeal under Federal Rule of Civil Procedure 23(f) and set a schedule for full briefing on the merits. In the alternative, Plaintiff requests that this Court summarily reverse and remand to the District Court for further analysis under more rigorous standards.

## V.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   Overview

Plaintiff filed her complaint (Dkt. No. 1-1) on August 27, 2019 where she alleges the following causes of action for: (1) failure to pay all minimum wages; (2) failure to pay overtime compensation; (3) failure to provide compliant rest periods to and/or pay missed rest break premiums; (4) failure to provide meal periods and/or pay missed meal period premiums; (5) failure to pay all wages owed within a timely manner; (6) failure to provide complete and accurate wage statements; (7) unfair competition; and (8) violations of PAGA.

The Parties attempted but failed to settle the case through mediation on October 7, 2020 with the well-respected mediator, Tripper Ortman, Esq.

On September 3, 2021, Defendants filed a Motion to Deny Class Certification (Dkt No. 53). The magistrate submitted a report and recommendation that the Court grant the Motion to Deny for those individuals who signed arbitration agreements (Dkt No. 64).

On November 15, 2021, Plaintiff filed her motion for class certification. (Dkt. No. 65), which Defendants opposed on January 31, 2022 (Dkt No. 71). Plaintiff filed her Reply on February 14, 2022 (Dkt No. 73). Plaintiff also filed a Motion to Strike the Videos that Defendants submitted along with its Opposition (Dkt No. 74).

Plaintiff's Motion was set to be heard on March 2, 2022, but the Magistrate cancelled oral argument. On September 23, 2022, the Magistrate served its Report to deny Plaintiff's Motion and Motion to Strike (Dkt No. 89). Plaintiff timely filed its Objection to the Report (Dkt No. 90). On November 30, 2022, the District Judge adopted the Report, issuing an Order denying Plaintiff's Motion and Motion to Strike (Dkt No. 91).

## B.    Plaintiff's Evidence In Support of Class Certification

Plaintiff submitted the testimonies obtained from depositions of Plaintiff as well as Defendants' employees which clearly established the existence of a common personal property inspection ("security check" or "bag check") policy that was applicable to all putative class members. All employees need to undergo the security check prior to entering and exiting the distribution center, regardless of where this facility is located. The policy applies equally to all California employees. (See Reply, Dkt No. 73-2 Wood Depo at 20:22-21:16; Dkt No. 73-5 Freedman Depo at 30:12-23; Dkt No. 73-3 Valencia Depo at 78:9-15).

All witnesses also agree that these security checks were done to make sure that everyone who goes in to the facility are authorized to be there and for the protection of Defendants' employees and properties. (See Reply, Dkt No. 73-3 Valencia Depo at 56:19-57:3; Dkt No. 73-5 Freedman Depo at 19:9-11; Dkt No. 73-4 Rodriguez Depo at 20:23-21:1; and Defendants' website https://www.vfc.com/news/featured-story/93502/human-rights-day-why-people-are-our-first-priority, accessed on 2/3/22).

Plaintiff has also sufficiently shown that all of security checks in Defendant's facilities occur or occurred upon entry of the building, before entering employees clock-in, and after exiting employees clock-out, whether it's for a meal or rest period or at the end of their shift. (See Reply, Dkt No. 73-2 Wood Depo at 20:22-21:4, 24:19-25, 26:10-12, 28:14-17, 29:7-15, 30:20-31:3, 32:13-17, 34:5-13, and 43:8-12; Dkt No. 73-5 Freedman Depo at 24:18-26:24; 30:8-23; Dkt No. 73-4 Rodriguez Depo at 16:3-6, 17:12-13, 19:8-13, 25:16-19, 28:15-23; Dkt No. 73-3 Valencia Depo at 50:15-51:3, 52:7-13, 54:16-18, 66:7-11, 76:1-7, 89:14-16, 111:7-10, 121:2-10; 78:9-15; See also Dkt No. 71-5 and 71-6).

Plaintiff has also clearly established that when Defendant determined the timekeeping area did not properly compensate the Class Members (which was made after Plaintiff filed her complaint), Defendant changed its policies uniformly and moved the timekeeping areas in all of their distribution facilities upon the recommendation of Defendants' legal counsel. (See Reply, Dkt No. 73-2 Wood Depo at 22:14-23:11, 25:1-6, 31:20-24, 32:2-5, 33:14-34:24, 54:17-55:3; Dkt No. 73-3 Valencia Depo at 76:8-80:20, 110:23-111:5; Dkt No. 73-5 Freedman Depo at 23:23-30:23; Dkt No. 73-4 Rodriguez Depo at 17:2-18:18, 28:19-23).

In her Motion and as will be discussed in detail below, Plaintiff showed that case law is clear that mere seconds spent in bag and security checks are enough to hold employers liable for unpaid time. In contrast, the cases where courts denied bag check claims are cases where there the bag checks were performed at the discretion of managers, which is contrary to this case where the managers had no discretion where the timeclocks were located.

## C.    Defendants' Facts and Evidence.

In support of their opposition, Defendants largely relied upon the declaration of Mr. David Wood, Defendants' Senior Manager Human Resources/Loss Prevention (Dkt No. 71-4) and the testimonies during the

depositions of Plaintiff (Dkt No. 71-2) and Mr. Wood (Dkt No. 71-3). Defendants also submitted the floor maps of the Visalia and Ontario distribution centers (Dkt Nos. 71-5 and 71-6) and the Videos of the security checks at the Visalia, Ontario, Corona, and Santa Fe Springs distribution centers (Dkt Nos. 71-7, 71-8, 71-9, and 71-10).

Defendants' evidence focused mainly on how the security checks were on different locations in the various distribution centers and how this should be interpreted to mean that there was no uniform policy with regard to security checks across all distribution centers. Defendants presented no evidence to refute Plaintiff's claim that there were security checks done off the clock in all distribution centers.

As the Videos were not previously disclosed in supplemental disclosures and Defendants' failure to disclose was not substantially justified or harmless, Plaintiff filed a Motion to Strike the Videos (Dkt No. 74).

## D.    The District Court's Decision

Plaintiff's Motion was set to be heard on March 2, 2022, but the Magistrate cancelled oral argument. On September 23, 2022, the Magistrate served its Report to deny Plaintiff's Motion and Motion to Strike (Dkt No. 89).

The Report first discussed Plaintiff's Motion to Strike the Videos, which the Report denied as follows: "As Defendant has met its burden to show that any delay in disclosure was harmless, and Plaintiff has not offered any arguments or evidence as to how she has been harmed by the allegedly delayed disclosure, the undersigned will recommend that Plaintiff's Motion to Strike be denied." (Dkt No. 89, p. 10).

The Report proceeded to discuss Defendants' Motion to Strike "new" evidence and arguments submitted with Plaintiff's Reply. The Report went on to rule on Defendants' Motion to Strike in this manner: "Defendant's Motion to Strike be denied as moot because consideration of the "new" evidence and arguments in Plaintiff's reply brief in support of the Class Certification Motion does not affect the

undersigned's recommendation that the Class Certification Motion be denied." (*Id.*, pp. 10-11).

The Report then moved onto the substance of Plaintiff's Motion, discussing each class that Plaintiff moved to certify. With regard to the Unpaid Time Class, the Report ruled as follows: "In sum, the Court finds that Plaintiff has failed to a uniform policy of the off-the-clock security checks, as the evidence shows that the security check procedures varied among the California distribution centers and also changed over the course of the class period. Therefore, Plaintiff has not established commonality and predominance, and the undersigned will recommend that the motion to certify the Unpaid Time Class be denied." (*Id.,* p. 19).

As regards the Overtime Class, the Report found that since this class "is predicated on an alleged uniform policy of off-the-clock pre- and post-shift security checks, the Court finds that Plaintiff has failed to establish commonality and predominance for the same reasons as for the Unpaid Time Class, discussed above." Hence, the Report also recommended that the motion to certify this class be denied. (*Id*.)

Moving on to the Meal Period Class, the Report held that: "As there is no substantial evidence that Defendant had a security check policy that uniformly deprived employees across all of its California facilities of a lawful meal period, the Court would have to conduct individualized inquiries into determine Defendant's liability," and would thus recommend denial of the motion with regard to this class. (*Id.,* pp. 21-22).

Similarly, the Report ruled on the Rest Period Class as follows: "Defendant's liability as to each member of the Rest Period Class would thus require individualized inquiries into each member's rest period experiences, and as such common questions do not predominate," which would warrant a recommendation to deny the motion pertaining to this class. (*Id.,* p.24).

Finally, on the Wage Statement Subclass, the Report found that: "The Court thus lacks any basis to conclude that Defendant issued uniform wage statements across all four California distribution centers," and would again recommend denial of the motion with regard to this class. (*Id.,* p.26).

Contrary to the evidence presented by Plaintiff that there was a uniform policy of undergoing security checks off the clock across all of Defendants' distribution centers, the Report went on to conclude that "Plaintiff lacks commonality and adequacy pursuant to Fed. R. Civ. P. 23 with respect to the putative class members who signed the Arbitration Agreement" and thus recommended to deny Plaintiff's Motion to Strike, to deem as moot Defendant's Motion to Strike, and to deny Plaintiff's Motion. (*Id.,* pp.26-27).

Plaintiff timely filed its Objection to the Report (Dkt No. 90). On November 30, 2022, the District Judge adopted the Report, issuing an Order denying Plaintiff's Motion and Motion to Strike (Dkt No. 91).

## VI.    REASONS FOR GRANTING THE PETITION

### A.    Legal Standard

The Court exercises "unfettered discretion" to grant a Rule 23(f) petition for leave to appeal a class certification order. *Chamberlan v. Ford Motor Co.,* 402 F.3d. 952, 957 (9th Cir. 2005). Discretion is guided by several factors. One is whether there is a "death-knell" situation for the plaintiff or defendant that is independent of the merits of the underlying claims. *Id.* at 959. Rule 23(f) review is also appropriate 1) when "the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review" or 2) when "the district court's class certification decision is manifestly erroneous." *Id*. These factors are not a "rigid test." *Id.* at 960. Rather, the Court may grant a Rule 23(f) petition based on "any

consideration that [it]finds persuasive." Fed. R. Civ. P. 23 advisory committee notes on 1998 amendments, Subdivision (f). The district court's Order meets the applicable standards and warrants review at this time.

## B. The Lack of Rule 23 Analysis Warrants Review

The Report contains almost no analysis under Rule 23, instead focusing strictly on one factor, the predominance of common issues, and upon finding that there was no uniform policy across all facilities and that there could be individualized issues,  determined that class certification must be denied. The Report, lacking any analysis beyond the predominance of common issues (and not completing that), is manifestly erroneous on the law and on the rigorous process mandated by controlling precedent, including *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), for evaluating certifiability under Rule 23. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). Given the lack of a thorough analysis, this Court, as it has done in the past with other orders denying class certification without analysis, (e.g., *Rodriquez v. Hayes*, 591 F.3d 1105, 1112-1113 (9th Cir. 2009); and *Narouz v. Charter Communications, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010)), is likely to vacate the district court's ordered entered here and evaluate for itself whether the class should be certified. Thus, a manifest error is "easily ascertainable from the petition itself ...." *Id.* There is "no reason for [Plaintiffs] to endure the costs of litigation when a certification is erroneous and inevitably will be overturned." *Chamberlan*, 402 F.3d. at 959. The district court's failures require leave to appeal to correct this manifest error, to enable this Court to engage in plenary review and/or to remand for an appropriate set of relevant findings and conclusions, to direct the district court to provide for rigorous review of whether there are common legal answers on the merits of each claim and to provide fairness for Plaintiff and the Class who were subject to Defendants' wage and hour violations.

This manifest error continues with the Report's summary overruling of Plaintiff's objections to Defendants' evidence. While it is true that this Court has held that evidence supporting a motion for class certification need not be admissible, *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018), it still needs to be somewhat reliable. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (holding that district courts must determine if expert testimony in support of class certification must meet Daubert).

Here, Plaintiff's evidentiary objections were based on declaration statements which were conclusory, speculative, or contradicted by other testimony. In short, much of the testimony upon which the Report relied upon was unreliable at best. By summarily overruling the evidentiary objections, the Report never considered the reason why Plaintiff made the objections in the first place, which, in turn, hampers this Court's ability to determine if the district court's order abused its discretion in denying class certification.

## C.   Plaintiff presented sufficient evidence that Defendant had a common policy that affects all Class Members.

Defendant does not dispute the existence of a common bag check policy that was applicable to all putative class members. All employees need to undergo the security check prior to entering and exiting the distribution center, regardless of where this facility is located. The policy applies equally to all California employees. (See Reply, Dkt No. 73-2 Wood Depo at 20:22-21:16; Dkt No. 73-5 Freedman Depo at 30:12-23; Dkt No. 73-3 Valencia Depo at 78:9-15).

Plaintiff unequivocally declared that whenever an employee enters or leaves the distribution center, he or she must undergo the security check. Consistent with Plaintiff's declaration and testimony, Defendant's own declarants testified that that all class members, regardless of their work location, are subject to the same security checks. And, in fact, Class Members regularly changed their behavior to either not

bringing in bags, or utilizing clear plastic bags, to make their security checks go faster. (See Dkt No. 65-4 Valencia Declaration, ¶¶ 3-4; Dkt No. 73-3 Valencia Depo at 50:15-51:3, 54:16-18, 56:16-57:3, 78:9-15, 111:7-10, 121:2-10; Dkt No. 73-2 Wood Depo at 20:22-21:16; Dkt No. 73-5 Freedman Depo at 30:12-23).

All witnesses also agree that these security checks were done to make sure that everyone who goes in to the facility are authorized to be there. (See Reply, Dkt No. 73-3 Valencia Depo at 56:19-57:3; Dkt No. 73-5  Freedman Depo at 19:9-11; Dkt No. 73-4 Rodriguez Depo at 20:23-21:1). The evidence likewise show that these security checks were done to protect Defendants' employees and Defendants' properties. (See Reply, Dkt No. 73-5 Freedman Depo at 19:9-11; Dkt No. 73-4 Rodriguez Depo at 20:23-21:1; Dkt No. 73-2 Wood Depo. at 20:22-21:16). According to Defendants' website:

> Health and Safety: Keeping people in our supply chain safe is non-negotiable. We are committed to zero loss of life or harm to health as a result of our extended operations and we're collaborating with industry peers, social enterprises and workers to build better health and safety standards across our supply chain.

(https://www.vfc.com/news/featured-story/93502/human-rights-day-why-people-are-our-first-priority, accessed on 2/3/22).

The foregoing clearly show that all the facilities discussed in this case were subjected to the same security checkpoints, leading to time spent off the clock under the control of their employer.

Plaintiff has also sufficiently shown that all of security checks in Defendant's facilities occur or occurred upon entry of the building, before entering employees clock-in, and after exiting employees clock-out, whether it's for a meal or rest period or at the end of their shift. (See Reply, Dkt No. 73-2 Wood Depo at 20:22-21:4, 24:19-25, 26:10-12, 28:14-17, 29:7-15, 30:20-31:3, 32:13-17, 34:5-13, and 43:8-12; Dkt No. 73-5 Freedman Depo at 24:18-26:24; 30:8-23; Dkt No. 73-4 Rodriguez Depo at 16:3-6, 17:12-13, 19:8-13, 25:16-19, 28:15-23; Dkt No. 73-3 Valencia Depo

at 50:15-51:3, 52:7-13, 54:16-18, 66:7-11, 76:1-7, 89:14-16, 111:7-10, 121:2-10; 78:9-15; See also Dkt No. 71-5 and 71-6).

Plaintiff has also clearly established that when Defendant determined the timekeeping area did not properly compensate the Class Members (which was made after Plaintiff filed her complaint), Defendant changed its policies uniformly and moved the timekeeping areas in all of their distribution facilities upon the recommendation of Defendants' legal counsel. (See Reply, Dkt No. 73-2 Wood Depo at 22:14-23:11, 25:1-6, 31:20-24, 32:2-5, 33:14-34:24, 54:17-55:3; Dkt No. 73-3 Valencia Depo at 76:8-80:20, 110:23-111:5; Dkt No. 73-5 Freedman Depo at 23:23-30:23; Dkt No. 73-4 Rodriguez Depo at 17:2-18:18, 28:19-23).

Case law is clear that mere seconds spent in bag and security checks are enough to hold employers liable for unpaid time. In contrast, the cases where courts denied bag check claims are cases where there the bag checks were performed at the discretion of managers, which is contrary to this case where the managers had no discretion where the timeclocks were located.

In the case of *Rodriguez v. Nike Retail Services, Inc.* (9th Cir. 2019) 928 F.3d 810, 818, the Ninth Circuit overturned a motion for summary judgment even where the evidence showed that the time spent in bag checks was less than 30 seconds, finding that that time was sufficient for liability. (See also *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Intern. Union, AFL-CIO, CLC v. ConocoPhillips Co.* (9th Cir. 2010) 593 F.3d 802, 808–809). Thus, the only question is whether or not the issue of control over the employees was one that could be determined on a class-wide basis.

And in similar situations, various courts have granted certification in several bag and security check cases even if in some of these cases, employees were only subject to a visual inspection. See *Lao v. H&M Hennes & Mauritz, L.P.*, No. 5:16-cv-00333-EJD, 2018 WL 3753708 (N.D. Cal. August 8, 2018); *Ornelas v. Tapestry,*

*Inc.*, No. C 18-06453 WHA, 2021 WL 3471173 (N.D. Cal. August 6, 2021); *Scott-George v. PVH Corporation*, No. 2:13-cv-00441-TLN-DAD, 2015 WL 7353928 (E.D. Cal. November 19, 2015); *Negrete v. ConAgra Foods*, 2019 WL 1960276 at *4 (C.D. Cal. 2019); *Moore v. Ulta Salon Cosmetics & Fragrance Inc.*, 311 F.R.D. 590, 604, 612 (C.D. Cal. 2015); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008); *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 572 (C.D. Cal. 2008); *Trevino v. Golden State FC LLC*, NO. 1:18-cv-00120-DAD-BAM, 2021 WL 2328414 (E.D. Cal. June 7, 2021). In each instance, the bag check, or security check, was mandatory, and occurred before and after the employee could clock in or out. The same circumstances are present here.

In the case of *Perez v. Leprino Foods Company* (E.D. Cal., Jan. 6, 2021, No. 117CV00686AWIBAM) 2021 WL 53068, at *16, the court ruled that as long as a uniform policy is shown, class certification should not be precluded even if such would entail individualized damages calculations.

Here, the uniform policy is not a written policy, but rather, the physical placement of the time clocks behind the security checkpoint. Further, there is no question that employees modified their behavior as a result. Employees made sure to wear their badges, and either eschew carrying bags, or used clear bags to limit the amount of time spent in these bag check lines. (See Dkt No. 65-4 Valencia Declaration, ¶¶ 3-4; Dkt No. 73-3 Valencia Depo at 50:15-51:3, 54:16-18, 56:16-57:3, 78:9-15, 111:7-10, 121:2-10; Dkt No. 73-2 Wood Depo at 20:22-21:16; Dkt No. 73-5 Freedman Depo at 30:12-23). All are indicative of individuals trying to limit the amount of off-the-clock work they must perform.

Looking at *Troester v. Starbucks*, 738 Fed. App'x 562, 562 (9th Cir. 2018), it is worth noting that this case expressly rejected the application of the federal de minimis doctrine. There, the district court had granted summary judgment in favor of the employer on the grounds of the federal de minimis doctrine. After certifying

the question to the California Supreme Court and receiving its ruling in *Troester*, the Ninth Circuit did not apply the California Supreme Court's ruling to the facts before it. *Id.* at 563. Instead, it noted that "'although California has a de minimis rule that is a background principle of state law, the rule is not applicable to the regularly reoccurring activities that are principally at issue here.'" *Id.* (quoting *Troester v. Starbucks*, 5 Cal. 5th 829, 848 (2018), as modified on denial of reh'g (Aug. 29, 2018)). This Court then reversed and remanded "for further proceedings consistent with the decision of the California Supreme Court." *Id.*

Further, the possibility left open by the California Supreme Court in *Troester* is that there might be some small amount of time that is not regularly occurring, which may not be compensable. But, those facts were not before the court in *Troester*. *Troester*, 5 Cal. 5th at 843. The Court explained that California law incorporates certain ancient maxims into its civil code, including the maxim, "de minimis non curat lex," which is codified at Civil Code Section 3533. *Id.* at 842-43 (citing *Gerawan Farming, Inc. v. Lyons*, 24 Cal. 4th 468, 514 (2000)).

Plaintiff also respectfully submits that the Report erred in relying on cases which are readily distinguishable. For instance, the class certification was denied in the case of *Christensen v. Carter's Retail, Inc.*, No. 8:20-cv-00776 JLS (KESx), 2021 WL 4932244 (C.D. Cal. October 21, 2021) because there was no evidence there were security checks as a common policy – that is, there was no evidence that the infrastructure of the stores or distribution centers required it. (*Id.*). On the contrary, however, Plaintiff has sufficiently shown, as discussed above, that the time clocks were placed after the security checkpoint and Class Members had to undergo security checks to enter or leave Defendant's facilities.

Similarly, the lack of a uniform policy in the case of *Heredia v. Eddie Bauer LLC*, No. 16-cv-06236-BLF, 2020 WL 127489 (N.D. Cal. January 10, 2020) also led to decertification when there was no evidence that the infrastructure of the retail

stores required off-the-clock bag checks. (*Id.*). Again, here there is sufficient evidence that pre-shift and post-shift security checks were impossible to avoid. (See Reply, Valencia Declaration, ¶¶ 3-4; Valencia Depo at 50:15-51:3, 54:16-18, 56:16-57:3, 78:9-15, 111:7-10, 121:2-10; Wood Depo at 20:22-21:16; Freedman Depo at 30:12-23).

Finally, Plaintiff submits that it was erroneous to rely on the denial of class certification in the case of *Figueroa v. Delta Galil USA, Inc.*, No. 18-cv-07796-RS, 2021 WL 1232695 (N.D. Cal. March 30, 2021) since there was no consideration of the *Rodriguez* case in its analysis.

## D. The Report Erred By Relying Too Heavily On Its Perception of the Merits of Plaintiff's Claims

As argued in Plaintiff's Reply, and which the Report, respectfully, did not heed, the merits of Plaintiff's legal theory – that the placement of the time clocks behind the security checkpoints lead Plaintiff and the Class Members to not be paid for all hours worked, including overtime, not be provided meal periods or rest periods free of all duties, and not be provided with wage statements which accurately recorded their hours worked – is not supposed to be considered at this time. Rather, the point of class certification is determining whether those claims can be determined on a class-wide basis.

As the Court is aware, on a motion for class certification, "[t]he court is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975); *Hargreaves v. Associated Credit Servs.*, 2017 U.S. Dist. LEXIS 79122, *6-7 (E.D. Cal. May 23, 2017) ("The material facts are disputed, but the Court must accept as true the substantive allegations of the class claim"). Indeed, under controlling Ninth Circuit precedent, "neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class

wrong, is a basis for declining to certify a class." *Blackie*, 524 F.2d at 901. A court may not inquire into the merits beyond the limited extent needed to decide issues essential to determining whether Rule 23 criteria are satisfied. (*Dalton v. Lee Publications,* WL 2181219, (S.D. Cal. May 20, 2013); *Moore v. Hughes Helicopters, Inc*. 708 F.2d 475, 480 (9th Cir.1983). It is inappropriate for the court to weigh competing evidence. *Wang v. Chinese Daly News*, 231 F.R.D. 602, 605 (C.D. Cal. 2005) (*citing Staton v. Boeing* Co., 327 F.3d 938, 954 (9th Cir. 2003) (abrogated on other grounds by *Vinole v. Countrywide Home Loans, Inc*., 571 F.3d 935 (9th Cir. 2009))). Any doubt as to the propriety of certification should be resolved in favor of certifying the class. *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913 (9th Cir. 1964).

With that said, there is a pending action largely on point. Recently, the Ninth Circuit in *Huerta v. CSI Electrical Contractors, Inc*., (9th Cir. 2022) 39 F.4th 1176, certified the following questions to the California Supreme Court:

> (1) Is time spent on an employer's premises in a personal vehicle and waiting to scan an identification badge, have security guards peer into the vehicle, and then exit a Security Gate compensable as "hours worked" within the meaning of California Industrial Welfare Commission Wage Order No. 16?

> (2) Is time spent on the employer's premises in a personal vehicle, driving between the Security Gate and the employee parking lots, while subject to certain rules from the employer, compensable as "hours worked" or as "employer-mandated travel" within the meaning of California Industrial Welfare Commission Wage Order No. 16?

*Id.* As the Court can see from the certified questions, the legal and factual issues certified to the California Supreme Court are similar to the action at hand. Given the facts of this action are not in dispute – the security check stations were placed between the entrance of the facilities and the time clocks – it seems appropriate to

certify the class now, wait for the California Supreme Court's decision in *Huerta*, and then proceed further. The Report, unfortunately, was not able to consider this decision, as the Ninth Circuit certified these questions after the briefing on motion was complete.

**E. Should the Report be correct about the lack of commonality across all four facilities, the Court can modify the class definition to limit it to the Visalia location.**

In recommending the Court deny class certification, the Report states that because there were differing locations of the timeclocks, and that each location was different, there was no commonality. (Dkt No. 89 at pp. 15-16). While Plaintiff disputes the notion, as the placement of the time clocks behind the security checkpoints was common in each distribution center, which lead to the harm Plaintiff alleges violates California law, such a finding would necessitate limiting the class to Visalia, not denying class certification across the board.

Indeed, Courts have, on several occasions, modified class definitions to preserve commonality (see *Ms. L. v. U.S Immigration and Customs Enforcement ("ICE")* (S.D. Cal. 2019) 330 F.R.D. 284, 287).

Since a class certification ruling at this stage is "inherently tentative," it follows that it can still be modified as held by the court in *Astiana v. Kashi Co.* (S.D. Cal. 2013) 295 F.R.D. 490, 492.

Finally, as the court ruled in the case of *Krueger v. Wyeth, Inc.* (S.D. Cal. 2015) 310 F.R.D. 468, 473–474, preliminary inquiry into the merits of a case during the certification stage is only allowed for the limited purpose of determining if certification is proper.

Here, the Report makes a finding that Plaintiff and the Class Members at Visalia were all subject to the uniform policy based on the placement of the time clocks. (Dkt No. 89 at pp. 18-19). Clearly, those time clocks did not move, or reposition themselves with each shift. So, the question as to whether the placement

of those time clocks allowed Plaintiff and the Class Members at Visalia to accurately record all hours worked would be common for all of the employees at Visalia. As such, the Report errs in not recommending, at minimum, that the Class definition be modified to those Class Members in Visalia.

**F.   Absent Reversal or Remand at this Time, this Case Is Effectively over for Plaintiff and the Affected California Residents**

The Seventh Circuit in *Blair v. Equifax Check Services, Inc.,* 181 F.3d 832, 834 (7th Cir. 1999), which *Chamberlan*, in part relies, states that, "[f]or some cases the denial of class status sounds the death knell of the litigation, because the representative plaintiff's claim is too small to justify the expense of litigation." Here, Plaintiff and the class members have damage claims for the alleged Labor Code violations that are too small to justify the expense of litigation. As such, the death knell doctrine test also supports Plaintiff's Petition for Appeal.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that leave to appeal be granted for full argument on the merits of the district court's class certification decision. In the alternative, Plaintiff respectfully requests that the Court summarily reverse the district court's class certification decision with directions to the district court to engage in a complete analysis of Plaintiff's motion.

Dated: December 12, 2022                **POTTER HANDY, LLP**

By: _____/s/James M. Treglio_____
      James M. Treglio
Counsel for Plaintiff-Petitioner, Briana Valencia and the Aggrieved Employees